IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO. JKB-16-0259 |
| JOSE ALBERTO SIBRIAN GARCIA, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

As brief background, in December 2019, Jose Alberto Sibrian Garcia pleaded guilty to Count One of the Fourth Superseding Indictment, Conspiracy to Participate in a Racketeering Enterprise. (*See* ECF No. 708.) He was sentenced to 324 months' imprisonment. (ECF No. 828.) Pending before the Court are several motions filed by Defendant: a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(2) (ECF No. 1766); an Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(2)(A) (ECF No. 1772); a Motion to Vacate Pursuant to 28 U.S.C. § 2255 (ECF No. 1775); a Motion to Appoint Counsel (ECF No. 1776); and a Motion for Status Update (ECF No. 1780). The Court analyzes each motion in turn below.

I.  **Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(2) (ECF No. 1766)**

In this Motion to Reduce Sentence, Defendant seeks a reduction in his sentence pursuant to Amendment 821 to the U.S. Sentencing Guidelines ("Amendment 821"). (ECF No. 1766.) Amendment 821 is a multi-part amendment. Part B to Amendment 821 provides a mechanism for certain zero-point offenders (i.e., criminal defendants with no criminal history points) to obtain a reduction of their offense level. *See* U.S.S.G. § 4C1.1. However, to be eligible for this reduction,

zero-point offenders must meet the criteria enumerated in the amendment, including that "the offense did not result in death or serious bodily injury." *Id.*

Here, Defendant received a criminal history score of zero. (ECF No. 851 at 13.) However, Defendant pleaded guilty to Conspiracy to Participate in a Racketeering Enterprise, and agreed that he participated in the first-degree murder of Victim 13. (ECF No. 708 ("When Victim 13 arrived, the Defendant and other MS-13 gang members attacked him with a machete and knives until he was dead. Victim 13's body was then dismembered and buried in the grave.").) Thus, he is not eligible for a sentence reduction under Amendment 821 and the Court will deny the Motion.

## II. Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(2)(A) (ECF No. 1772)

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a district court may modify a convicted defendant's sentence when "extraordinary and compelling reasons warrant such a reduction" and such relief is permitted by "the factors set forth in section 3553(a) to the extent that they are applicable."

### A. Extraordinary and Compelling Reasons

Defendant sets forth several reasons that he contends amount to an extraordinary and compelling reason warranting his release: harsh conditions due to COVID-19, the amount of time served, and issues with medical treatment. (ECF No. 1772 at 1.)

To start, Defendant argues that he has been subjected to harsh living conditions during the COVID-19 pandemic. (*Id.*) He states that he "ha[s] los[t] . . . contact with [a] majority of his family and still ha[s] not heard from other family members who could have been victims of Covid-19 . . . or another deadly illness[]." (*Id.*) He also states that he "also contracted Covid-19 [one] time which is unconfirmed by the BOP." (*Id.*) Neither of these amount to extraordinary and compelling reasons warranting his release.

Defendant also argues that he has served approximately six years and ten months of his sentence, and that although he has served only a small proportion of his sentence, the Court "can couple this ground with [other] grounds" and find that he has established an extraordinary and compelling reason. (*Id.* at 3.) Serving approximately seven years of a 27-year sentence does not amount to an extraordinary and compelling reason warranting his release.

With respect to his medical arguments, Defendant explains that:

> he is [actively] still receiving a significant delay in treatment for his stomach pain and still ha[s] failed to be properly prescribed [] some type of medication to treat his pain, as well as [to] be sent off to see a stomach specialist for his extreme pain. However, his active condition has plagued his health originating back [to] the year 2020, but yet [it's] still present and causing him to suffer irreparable harm daily which is going untreated and uncared for here in the BOP. This has caused him to suffer from black outs and loss of con[sciousness] on multiple occasions, which [he] assume[s] and presumes [is] bad for his health.

(ECF No. 1772 at 2.) He also explains that he "was possibly diagnos[ed] with a mass in his [epiglottis][1] after a lengthy delay of treatment from the BOP" and that his condition "went untreated and undiagnosed for several years [and] could have been detrimental to his health or life had it gone any further he believes." (*Id.*) He explains that "extreme pain" "is still undiscovered and unfound by BOP." (*Id.*) In support of these contentions, he attaches BOP records that reflect several communications from Defendant to Health Services and to the Warden seeking follow up for his medical conditions, and complaining of extreme pain. (ECF No. 1772-2.) He also provides medical records, which reflect a medical assessment, including that Defendant presented "complaining of continued intermittent LLQ pain of abdomen and occasional epigastric pain." (ECF No. 1772-4.) They also reflect that he "[h]ad an EGD in Sept. 2023 which showed essentially normal stomach and duodenum, however, did show a[] mass in his neck with an[] enlarged

---

[1] Although Defendant states that the mass is in his "epoldoidies," his medical records provide that the mass is in his epiglottis. (*See* ECF No. 1772-4.)

epiglottis," and that "[a]n ENT consultation for direct visualization was recommended and scheduled[.]" (*Id.*) A later medical record reflects that Defendant presented with a "questionable mass at the epiglottis" but that the medical professional ultimately did not find "any masses around his epiglottis." (*Id.*) It also explains that he "has some pain in his stomach at times," that he is currently taking certain medication for the stomach pain and that "it help[s] some but does not completely take his pain away." (*Id.*)

One circumstance that presents an extraordinary and compelling reason warranting release is where "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). Here, the record before the Court does not establish that Defendant has met this threshold. It appears that the BOP has provided follow-up care regarding the potential epiglottal mass and that Defendant appears to be medicated for his stomach pain. It is possible that Defendant could establish extraordinary and compelling reasons due to his medical health upon the presentation of more evidence, but the Court concludes that the record before the Court does not currently support such a finding.

### B. Section 3553(a) Factors

Even if Defendant had established an extraordinary and compelling reason warranting his release, the Court concludes that the § 3553(a) factors do not. These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant"; the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; the need "to afford adequate deterrence to criminal conduct"; the need "to protect the public from further crimes of the defendant"; and the applicable Sentencing Guidelines range. 18 U.S.C. § 3553(a).

Here, the nature and circumstances of the offense counsel in favor of a lengthy sentence. The Defendant pleaded guilty to RICO conspiracy, and admitted to participating in the murder of Victim 13 in a particularly gruesome fashion. The Plea Agreement provides the following facts:

> The Defendant and other MS-13 gang members brought Victim 13 from Annapolis to Wheaton Regional Park in Wheaton, Maryland, where other gang members had dug a grave and gathered weapons. When Victim 13 arrived, the Defendant and other MS-13 gang members attacked him with a machete and knives until he was dead. Victim 13's body was then dismembered and buried in the grave.

(ECF No. 708 at 10.) The Plea Agreement also recounts two other troubling events, although they did not result in the death of the intended victims:

> [A]nother MS-13 gang member identified Victim 9 as a suspected rival gang members and got the Defendant and other MS-13 members to arrange to lure Victim 9 to a secluded area in order to murder him. That plan did not come to fruition because Victim 9 refused to go to the secluded area . . . .
>
> The Defendant and other MS-13 gang members . . . saw Victim 15 and Victim 16, who they suspected were rival gang members. The Defendant and other gang members found Victims 15 and 16 in a bathroom and forced them out at knife-point. The gang members hit Victims 15 and 16 with branches, fists, and feet and talked about killing them with the knife. When bystanders approached, the Defendant and other gang members ran away.

(*Id.* at 10–11.) As the Court explained at Defendant's sentencing, Defendant killed Victim 13, and may have killed or seriously injured the other victims had the plans not been thwarted. There is no crime more serious than killing another human, and the means by which Victim 13 was killed were particularly gruesome. Further, the need for both specific and general deterrence is great, as is the need to protect the public. The Sentencing Guidelines range was 292 to 365 months, with Defendant being sentenced to 324 months.

In short, the Court continues to find that 324 months is the sentence that is sufficient but not greater than necessary.

### III.   Motion to Vacate Pursuant to 28 U.S.C. § 2255 (ECF No. 1775)

Defendant also filed a Motion to Vacate Pursuant to 28 U.S.C. § 2255. (ECF No. 1775.) He argues that he received ineffective assistance of counsel, because his attorney "failed to follow his request and instructions to file a direct appeal which would have attack[ed] the sole purpose of his extra [two] year illegal sentence." (*Id.*) He explains that he received a sentence that was two years longer than that of a co-defendant with the same relevant conduct, and that, had his attorney filed a direct appeal, the outcome of Defendant's proceedings would have been different. (*Id.*)

The Motion will be denied as untimely. Motions brought pursuant to § 2255 are subject to a one-year limitations period. As is relevant here, as provided in 28 U.S.C. § 2255(f), the limitation period runs from "the date on which the judgment of conviction becomes final."[2] Judgment was entered in this case on February 12, 2020. (*See* ECF No. 828.) Defendant did not file an appeal, so the judgment became final on February 26, 2020, 14 days after judgment was entered. *United States v. Johnson*, 203 F.3d 823 (4th Cir. 2000) ("Where, as here, a defendant does not pursue a direct appeal, the conviction becomes final when the time expires for filing a direct appeal."). He did not file the instant Motion until over four years later, on September 16, 2024.

There are circumstances under which a Defendant may be entitled to equitable tolling of the one-year limitations period. "[T]o be entitled to equitable tolling, an otherwise time-barred petitioner must present (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). Nothing in the Motion pending before the Court indicates that any of these elements (let alone all three) are present. Although Defendant explains that he does not understand English (ECF No. 1788), this does not excuse an over four-year delay in filing the instant Motion.

---

[2] There are other dates that may be used to calculate the one-year limitations period, but none are relevant here.

*See United States v. Rangel-Gutierrez*, Crim. No. 19-00050-KDB-SCR-1, 2024 WL 2787816, at *3 (W.D.N.C. May 30, 2024) ("While the Fourth Circuit has not explicitly addressed the issue, district courts here have consistently held that a prisoner's inability to speak English is insufficient to warrant equitable tolling." (collecting cases).)

Thus, Defendant's Motion to Vacate Pursuant to 28 U.S.C. § 2255 (ECF No. 1775) will be denied.

### IV. Motion to Appoint Counsel (ECF No. 1776)

Defendant has also filed a Motion to Appoint Counsel. There is no right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."). However, the Court has discretion to appoint counsel. *See, e.g., United States v. Wylie*, Crim. No. KDB-18-0054, 2021 WL 5406880, at *1 (W.D.N.C. Nov. 18, 2021) ("There is no general constitutional right to appointed counsel in post-conviction proceedings [but the] Court has discretion to appoint counsel in proceedings under 18 U.S.C. § 3582(c) if the interests of justice so require.").

In the instant case, Defendant has not demonstrated that the interests of justice warrant the appointment of counsel. He explains that his situation warrants the appointment of counsel because he has made a showing of a potentially meritorious case. (*See* ECF No. 1776.) However, as the foregoing discussion reflects, he has not done so, and the Court does not find that his particular circumstances merit the appointment of counsel. The Motion to Appoint Counsel will be denied without prejudice.

### V. Motion for Status Update (ECF No. 1780)

Defendant has filed a Motion for Status Update seeking for the Court to address his Motion for Compassionate Release, and explaining that he has not heard from the court reporter regarding

7

his request for transcripts. (ECF No. 1780.) The Motion will be denied as moot with respect to his request that the Court address his Motion for Compassionate Release. With respect to his sentencing transcripts, the Clerk's Office has notified the court reporter about Defendant's request for sentencing transcripts.

## VI. Conclusion

For the foregoing reasons, it is ORDERED that:

1. The Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(2) (ECF No. 1766) is DENIED;

2. The Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(2)(A) (ECF No. 1772) is DENIED;

3. The Motion to Vacate Pursuant to 28 U.S.C. § 2255 (ECF No. 1775) is DENIED;

4. The Motion to Appoint Counsel (ECF No. 1776) is DENIED WITHOUT PREJUDICE; and

5. The Motion for Status Update (ECF No. 1780) is DENIED AS MOOT.

DATED this 6 day of March, 2025.

BY THE COURT:

James K. Bredar
United States District Judge